Defendant-appellant Isaac Lockhart appeals from his convictions, entered subsequent to a plea of guilty, for one count of aggravated burglary in violation of R.C. 2911.11, and two counts of attempted murder in violation of R.C. 2903.02. The appellant was sentenced to a term of incarceration of ten years for aggravated burglary and ten years to be served on each count of attempted murder. Each of these crimes constitute a first-degree felony and the court imposed the sentences consecutively.
The appellant brutally attacked and injured Dejeanette Westbrooks in the home of her grandmother. During the attack, the appellant injured Robert Smith, Ms. Westbrooks' uncle, who intervened to save her. The altercation ceased only when Ms. Smith, Ms. Westbrooks' grandmother and Robert's mother, hit the appellant with a flowerpot. Present during the attack was Ms. Westbrooks' child. The appellant was charged with two counts of felonious assault, two counts of aggravated burglary, and two counts of attempted murder. The appellant pled guilty to the attempted murders of both Ms. Westbrooks and Mr. Smith and pled guilty to one count of aggravated burglary. The remaining counts were nolled.
At the end of the plea hearing, the court referred the appellant for a pre-sentence investigation report. At the sentencing hearing, the court heard from the appellant's family who informed the court that he was brought up in a religious family. The appellant's supporters conceded that he made an error for which he must pay, but they requested the court to have mercy. The appellant spoke and both accepted responsibility for his actions and expressed his sorrow.
At the sentencing hearing, the court heard from East Cleveland Police Detective James Root who stated that he investigated this case. Detective Root opined that the appellant has shown no remorse and that if Ms. Westbrooks' grandmother, Ms. Smith, had not hit the appellant with the flowerpot, the sentencing in progress would be for homicide, not for attempted murder. The detective believed that this intervention kept the appellant from killing Ms. Westbrooks.
The victim, Dejeanette Westbrooks, stated that "this has been going on since the age of 16. I'm now 22. And I feel now it's time for him to be held responsible for his actions." (T. 32.) Ms. Westbrooks informed the court that the appellant came after her and that he needed to learn that he cannot force anyone to be with him if they do not wish to be with him. (T. 32.) She and her son both have nightmares from this incident. The appellant's family has promised before that he would never come after her again, but they have never fulfilled that promise.
Ms. Smith, Dejeanette's grandmother, spoke to the court. She stated that the day of the crimes was the first time the appellant had been to her home. She informed the court:
 But that day my granddaughter was standing on the porch, and when he run up on the porch they run in the house and locked the door. And he dived through the window with a weapon in his hand. He didn't come to laugh and talk. He came there to do damage and he did.
 He told my granddaughter he had come to kill her and he tried. He stabbed her 22 times. He knocked me down twice. My son was upstairs. He heard the commotion. He runs and he stabbed him.
 This is not [sic] the first time I have seen him in court. This is the third time for abuse and it's going to go on. My great grandson was hollering and begging him, daddy, your mama is bleeding. You hurting mama, but he didn't stop. He went through three rooms of my house, tore it up just like a storm went through it. And he was riding my granddaughter like you ride a horse.
 And I'm telling you, I'm nervous, yes. He hurted me when he hurt many more people. But you have the power today to give us some peace, and I ask you, please, help us.
(T. 36, 37.)
Savetta Westbrooks, Dejeanette's mother and Robert's sister, that the appellant had previously battered Dejeanette and as a result there had been a warrant issued for his arrest in October. Because of this incident, Ms. Westbrooks' mother has had no contact with her daughter and grandchild. Ms. Westbrooks' mother informed the court that her other daughter is afraid to be in their home and neighborhood because of the appellant and his family. Dejeanette was at her grandmother's because, based on the appellant's past behavior, Dejeanette was no longer safe at her mother's home.
Mr. Nate Colbert, on behalf of the probation department, informed the court that the appellant had previously been convicted of drug trafficking and carrying a concealed weapon. His sentence of one and one-half years on each count, concurrent, was suspended and the appellant had been placed on three years probation. The appellant admitted that he was a probation violator.
The appellant's first assignment of error:
 THE COURT ERRED IN IMPOSING THE MAXIMUM PRISON TERM WHEN TWO OR MORE OF THE OFFENSES AROSE OUT OF THE SAME INCIDENT.
In the first assignment of error, the appellant argues that the offenses were committed as part of the same on-going criminal act and thus should have been considered allied offenses of similar import for purposes of sentencing. The state asserts that since the appellant failed to raise this issue before the trial court, it is waived.
The state's contention is correct. This court has held that where an appellant fails to raise the issue of allied offenses before the trial court, the issue is waived. State v. Williams
(1995), 105 Ohio App.3d 471 citing to State v. Comen (1990),50 Ohio St.3d 206.
Moreover, aggravated burglary and attempted murder are not allied offenses. For purposes of R.C. 2941.25, the elements of these two offenses do not correspond to such a degree that commission of one offense will result in the commission of the other under the first prong of the two prong test given in Newarkv. Vazirani (1990), 48 Ohio St.3d 81 at the syllabus.
The question of whether or not both counts of attempted murder may be allied offenses of similar import must be reviewed to determine whether the appellant had a separate animus for each crime. Id. at the syllabus. Attempted murder is an attempt to purposely cause the death of another. R.C. 2903.02/2923.02. Courts have held that where an offense is defined in terms of conduct towards another, then there is dissimilar import for each person affected by the conduct. State v. Hawkins (June 19, 1998), Montgomery App. No. 16742, unreported, citing State v. Phillips
(1991), 75 Ohio App.3d 785.
In the case sub judice, the trial court permitted the victim, her family, and the investigating police detective to speak at the sentencing hearing as well as the appellant's family/supporters. From these citizens and from the pre-sentence investigation report, the court was appraised of the facts that the appellant attempted to commit two murders. The appellant broke through a window to reach his victim and then brutally assaulted her, inflicting 22 stab wounds and biting her eye. The appellant also attacked the victim's uncle who was trying to intervene and save his niece's life. The appellant had two distinct victims, and the offenses were not allied offenses of similar import.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE TRIAL COURT ERRED IN IMPOSING MAXIMUM TERMS ON ALL COUNTS AND CONSECUTIVE PRISON TERMS ON COUNTS.
In this assignment of error, the appellant asserts that the court erred in imposing maximum consecutive sentences. We note that an appellate court may only modify or vacate a lower court's sentence if it clearly and convincingly finds the sentence to be unsupported in the record, contrary to the guidelines in R.C.2929.13, or otherwise contrary to law. State v. Assad (June 11, 1998), Cuyahoga App. Nos. 72648, 72649, unreported.
This court will consider the statutory provisions which set forth the applicable sentencing criteria. R.C. 2929.14 (A) (1) provides that, except as provided in other sections of the code, for a first-degree felony, the court shall impose a definite term that shall be three, four, five, six, seven, eight, nine or ten years. R.C. 2929.14 (C) provides that the court may impose the longest prison term where the offender has committed the worst form of the offense and upon offenders who pose the greatest likelihood of committing future crimes.
R.C. 2929.13 (D) provides that when sentencing for a felony of the first degree, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section R.C. 2929.11. See State v. Albert (1997),124 Ohio App.3d 225. Notwithstanding this presumption, a court may impose community control sanctions where it finds both 1) community control sanctions would adequately punish the offender and protect the public from future crime because the applicable factors under R.C. 2929.12 indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism; and, 2) community control sanctions would not demean the seriousness of the offense, because one or more factors under R.C. 2929.12 indicate that the offender's conduct was less serious than conduct normally constituting the offense and that those factors outweigh the applicable factors that would indicate the offender's conduct was more serious than conduct normally constituting the offense.
Although a term of prison was presumed for the appellant herein, since the prison term was not mandatory, the trial court was required to consider the factors set forth in R.C. 2929.12. It has been held that R.C. 2929.13 (D) does not require the trial court to state on the record the R.C. 2929.12 (B-E) factors it considered in deciding to impose the presumptively correct sanction for a [first] degree felony offense. State v. Ober
(Oct. 10, 1997), Green County App. 97 CA 0019, unreported. For this level of offense, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under R.C. 2929.11. Id. It is enough that the record reflect that the trial court considered these seriousness and recidivism factors. Ober, supra.
At the sentencing hearing, the court made the following statements:
 All right. Now, the Court has heard moving arguments, moving statements by a number of victims in this case, and we've heard some moving requests by people speaking for Isaac Lockhart, asking that the Christian ethic be applied in this case.
 The underlying facts are that there are apparently three different victims. Dejeanette Westrooks was set upon. She suffered a collapsed left lung. She was stabbed over 20 times in the chest and back, head, neck and arm.
 Now, there is no indication here as to the age of Dejeanette. How old are you?
MISS WESTBROOKS: I'm 22. I just turned 22.
 THE COURT: And she also was bitten. She has an abscess on her left eye from the puncture wound. She has scarce [sic] all over her body from stab wounds. She spent time in the hospital and has had follow-up visits.
 And, in addition to that, and it goes without saying, it's almost self-evident that anyone subjected to that kind of a trauma or attack would have psychological, emotional perhaps even mental problems later on in life, both during the period of time after and throughout their lifetime.
 Then we have Georgia Smith. Georgia Smith is age 70. She's suffered a bruised and sprained leg. She was pushed down by the defendant several times when she was trying to help her granddaughter and stop the stabbing of her.
 She had to be fitted with a leg brace and walked with a cane as a consequence. She still to this day needs that cane, and again, it goes without saying, she will suffer throughout the remainder of her days which are days of peace that she suffer with trauma and emotional problems.
 She is probably steeled by the vestitudes (sic) of life and maybe able better to cope than a younger person. She feels that her sense of security in the home has been violated, and no longer feels secure, and fears the return of you, Isaac, to the area.
 Reverend Smith is a fellow who entered into life with not all of the gifts that others of us have, and he suffered stab wounds in the left side of his head, ear, neck and both shoulders. He was attacked by you, Isaac, with an ice pick when he was trying to restrain you from further injuring Miss Westbrooks.
 He had 15 stitches in his head and his neck. He had been given antibiotics, pain pills, Isaac, and then he had to pay for medical expenses at the hospital. And then he suffers dreams and memories of what you did, Isaac.
(T. 46-48.)
The trial court heard evidence from a probation officer that the appellant had a previous conviction for drug trafficking and carrying a concealed weapon and the court listened to Ms. Smith state that this is the third time she has been in court due to the violence between the appellant and Ms. Westbrooks. The court heard Ms. Smith, age 70, describe the attack in graphic terms. She stated that the appellant knocked her down twice; that he went through three rooms of her house and tore it up like a storm; and that he rode her granddaughter like a horse. The court listened as the victims spoke about the brutal attack, their fear of the appellant, and the psychological trauma which resulted from the attack. The court recited the extensive physical and psychological wounds suffered by Ms. Westbrooks and her uncle.
Given the trial court's lengthy statement, the information imparted by the victims, and the statements of the victims' family, it is apparent that the court had before it a sufficient factual basis to support its decision. It is evident that the court considered the seriousness of the appellant's conduct as outlined in R.C. 2929.12 (B) (C) and the likelihood of recidivism as provided in R.C. 2929.12 (D) (E). The trial court did not err in imposing maximum consecutive sentences on the appellant.
The appellant's second assignment of error is overruled.
The third assignment of error.
 THE TRIAL COURT ERRED IN FAILING TO MAKE A FINDING GIVING REASONS FOR THE MAXIMUM SENTENCE IMPOSED AND CONSECUTIVE TERMS.
In the third assignment of error the appellant argues that the court erred in failing to state its reasons for the maximum consecutive sentences.
This court will consider the statutory provisions which set forth the applicable standards for the sentencing hearing. R.C.2929.19 (A) requires the court to hold a hearing and to permit the offender, the prosecutor, the victim, and any other person to address the court. The court herein fulfilled this requirement.
R.C. 2929.19 (B) (1) requires the trial court to consider the record, information presented at the hearing and the pre-sentence investigation report. Under R.C. 2929.19 (B) (2) (c) (d) (e) the trial court is required to make a finding that gives its reasons for selecting the sentence imposed when it imposes consecutive sentences under R.C. 2929.14 and when it imposes maximum sentences under R.C. 2929.14. In essence, the trial court was required to consider whether the appellant has committed the worst form of the offense, and whether the appellant poses the greatest likelihood of committing future crimes. Albert, supra.
Talismanic words from the sentencing court are not required.State v. Pincher (Oct. 14, 1997), Franklin App. No. 97AP03-352, unreported. However, the trial court speaks only through its docket. Gaskins v. Shiplevy (1996), 76 Ohio St.3d 380. Courts have held that specific findings as required under the statute must be placed in the journal entry of sentencing. State v.Lazenby, (Nov. 13, 1998), Union App. No. 14-98-39, unreported. A sentence in a journal entry reciting that the court has considered all the factors is not sufficient for the imposition of a maximum sentence. State v. Brooks, (Nov. 5, 1998), Cuyahoga App. No. 74382, unreported. Thus, the trial court was required to state more in its journal entry than noting that it considered all of the required factors of the law.
The appellant's third assignment of error is well taken.
The appellant's convictions are affirmed. Case remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS; DIANE KARPINSKI, P.J., CONCURSAND DISSENTS, WITH CONCURRING AND DISSENTING OPINION ATTACHED.
 _____________________________________ JAMES D. SWEENEY JUDGE
CONCURRING and DISSENTING OPINION